May it please the court, Joshua Weir appearing on behalf of the appellant Juan Jose Inzunza Reyna. This case is an appeal of a BIA affirmance of an immigration judge pretermiting a cancellation of removal case on the basis of a crime involving moral turpitude conviction. Having been in the courtroom earlier this morning and heard the prior arguments, I'll just jump right into it as this court's aware of the procedure behind cancellation of removal. The BIA in this case made two determinations with regard to the appellant's theft by receiving conviction. The two determinations are first, although the immigration judge in this case determined that Nebraska statute 28-517 did not require the intent to permanently deprive, we agree with the immigration judge on this case, however, in the footnote at the end of the opinion the BIA determined that Nebraska statute 28-517 does not require intent to permanently deprive. So that's the first point that I would like to address. So what is the generic definition of a crime involving moral turpitude, the theft by receiving, as it was in place in Nebraska in 2008 when the appellant was convicted. A theft is a crime involving moral turpitude if it requires an intent to deprive the owner of the property permanently or substantially. That was the case law. That was the Grasley case from the BIA and Jurado cases from the BIA. That's pretty clear that in 2008 it required an intent to permanently deprive. Only in So what we're looking at here is at the time that the appellant entered his plea in 2008 did the Nebraska statute require an intent to deprive permanently. So what is the realistic probability of a prosecution under that statute? The minimum conduct with a reasonable possibility of being prosecuted under that statute involves an intent to deprive temporarily. The classic example of this type of case would be a joyriding where the individual takes a car, deprives the owner of the possession of the car, goes for a ride, and then ditches the car. Doesn't return the car to its owner, only deprives the owner for a temporary period of time, and then subsequently ditches it. That is the Hornbook case for a temporary deprivation. Now a number of states, including Nebraska and Arizona, and this is noted at footnote four of the Diaz-Lizarraga opinion, adopted the model penal code, and that was in place in 2008. And the Diaz-Lizarraga opinion had to change the law with regard to this model penal code because a number of states had adopted the model penal code to state that we don't need to determine if this was a theft or a theft by receiving, if it was temporary. We're going to classify all of these offenses as theft, and it doesn't matter if a defense attorney can get in there and prove that there was not an intent to permanently deprive. That's clear from the Diaz-Lizarraga footnote four, and it's clear from the Hornbook position in Nebraska of a joyriding offense. So the BIA disagreed, however, and they said that the statute does not cover less than permanent takings. I would submit that Judge Fujimoto had it correct, and Diaz-Lizarraga had it correct. The second issue that the BIA had, and it's just, we've only got one paragraph to work with, and they say, and they make a reference to a matter of deang and saying, well, even if it's not, we have found this type of behavior to be morally turpitudinous. Well, matter of deang is dealing with a whole different statute whatsoever. Matter of deang is dealing with an aggravated felony, and the law on an aggravated felony is different from the law on a crime involving moral turpitude. After the Diaz-Lizarraga opinion, they now align, but with regard to an aggravated felony, an intent to temporarily deprive for a number of years has always been an aggravated felony if the person is sentenced to a year or more. However, the CIMT, it was clear, and it's made abundantly clear in the Diaz-Lizarraga opinion that if and only if a permanent intent is demonstrated. So at the time that this was in place, in 2008, 28-517 could have been convicted for a temporary taking, and this reference by the BIA to matter of deang applies to a different law. They align today, but back in 2008, they did not align. So does the minimum prosecuted conduct necessarily come within the generic definition? And the answer is no. A person who receives property with intent to deny the owner temporarily can be convicted under 28-517, but not the generic definition. Therefore, the statute is overbroad. And is the statute divisible? No, because it's not phrased in the alternative. You don't have an opportunity to commit this temporarily or permanently. So that was the law in 2008, and this, both parties in their brief and the response brief were arguing whether or not Nebraska applied to a permanent taking. I did supplement yesterday to the court. I apologize greatly for the late submission. However, a number of sister circuits to this court have determined that that Diaz-Lizarraga opinion in 2016 is not to be applied retroactively because an individual in 2008, if they were to go to an immigration attorney, if they were to seek advice before entering a plea, they would have been told that the Nebraska statute, as constituted under the model penal code, does not involve an intent to permanently deprive. That's a safe offense for you to plead to. And so it'd be a due process violation to apply that Diaz-Lizarraga opinion from 2016 retroactively. With that, I know I'm... Why would that not apply even under your definition of the Nebraska statute? Because according to your 20HA letter, the BIA now says theft involves either permanent deprivation of the owner's rights, which you all agree would be a theft and would be a moral turpitude, or in circumstances in which they're seriously eroded. Now, why would a joyride not be a seriously erosion of rights? That would be under the Diaz-Lizarraga. That did not come into play I understand, but why wouldn't... So you're saying that serious erosion of rights is not an element that could be used back in 2008? That's correct. Under the Grasley opinion and the Jurado opinion from the BIA, that was not an element that was considered back in 2008. Is there a Nebraska case involving joyriding that would show us how the statute applies to that case? Unfortunately, I have not found one. The closest that I have found, and it was not cited in the brief, but in anticipation of this, it's not a joyriding case, but it's State v. White, 272 Nebraska 421, and it's not the 28517, but all of the theft statutes are treated the same. This was 28509, and it was essentially embezzlement of grain. A grain dealer appropriated grain for himself intending to return it to the owners after he had sold it, but the Nebraska Supreme Court makes it explicit in that opinion. They say that a permanent deprivation is not required under the law, and all of the Nebraska theft statutes are treated the same. So a joyriding statute, it would be rare, as a criminal defense attorney in this case, to make it up on appeal where we would have a decision like that because 28517 would clearly apply to a joyriding case, and just the fact that we don't have an appellate opinion on something that's not even a close call in my mind does not mean that that would not exist in this district. You don't think you could beat the joyriding charge by showing intent to restore? That you abandon the car, you're essentially intending to restore it because you know it'll be found and the owner will recover it? That would be the argument that I would make in that position. However, why isn't that correct? Restoring it to the owner is an affirmative act. Ditching it in a ditch or leaving it, you know, in another state or in a different county, something like that, that would not apply to the restoration. The restoration is an intent to bring it back into the possession of the owner. No, the act required is disposal. The intent is to restore. Correct. Intending to bring it back. What else would he be intending to do? To discard it in some remote location where ultimately it'll be returned to the owner, but the intent was not to bring it back to the owner. I just wonder if it requires an intent to bring it back to the owner. It says disposed with intent to restore it to the owner. I don't know. I just wondered if you might have a good defense there that you intended that someone would find it and return it to the owner and therefore you're not guilty of theft when you, under this statute at least, when you joyride and abandon the car. I'm out of time, your honor. You may answer if you have something to say about it. It's essentially repeating what I've already said. Well, we don't want to waste time repeating it. Thank you. Thank you. We'll give you a minute or two in rebuttal since I used up your time there. All right, Ms. Byram, we'll hear from you. May it please the court, I am Sarah Byram appearing on behalf of the Attorney General William P. Barr. Contrary to Petitioner, the analysis here begins and ends with the statute. 28-517 for receiving stolen property is categorically a theft, offense, crime involving moral turpitude and Petitioner does not show, which is his burden to do, that there is a Now, the relevant act that we're looking at here is where a permanent taking is intended. That's what the board has looked at and that's what this court in Dominguez-Herrera stated as to a theft CIM, crime involving moral turpitude, that it involves an intended permanent taking. In this case, with this statute, we have that intended permanent taking because a lack of intent to stated this in State v. Hubbard and made clear that it was something that the prosecution must prove for conviction. So we know that in this case, because Petitioner was convicted, he did not have an intent to restore the property to the owner. In addition, this statute also requires a knowing scienter. The court in Al-Musadeh, the Namaraska court in Al-Musadeh stated that knowledge is an essential element of the crime and that the focus is on the knowledge or the Petitioner's specific belief. It's a subjective standard. And because the statute has both the intended permanent taking and the requisite scienter, it is a theft offense CIMT under this court's case law. Additionally, equally important, Petitioner doesn't bring any, has not shown a realistic probability that the court in Nebraska State courts apply this statute to non-morally interpreted misconduct. That is his burden. He states no cases in his brief nor before this court this morning. Well, can you just address as a matter of logic, whether the fact that the state can prove no intent to restore necessarily means that there was intent to take permanently or to deprive permanently? Well, if when a person is convicted, given that there is no lack of intent to restore return that property, then the logical step on that is that he intended to keep that property from the owner and not return it because if there had been an intent to restore, presumably he could not be convicted under the statute and he could not, the prosecution could not show that that permanent intent. So because every conviction is going to necessarily entail... The state doesn't have to prove intent to deprive permanently, does it? They have to show essentially the converse, which is the lack that there was a lack of intent to restore that property. Right, right. Well, that's what I'm getting at is whether that is essentially the converse or not. Are there cases where a person would not intend to restore, but also not intend to deprive permanently? Just have no intent on it at all? That's... Petitioner makes that argument. I have not found any cases where that is the case and of course he does not cite any cases for that proposition. So our interpretation of the statute is because there is this lack of intent to restore as the element, that that necessarily entails that where there's a conviction, the receiver of that property intended to permanently deprive that true owner of his property. There's no intent that he's going to return that to the true owner at any time. And again, I would also emphasize that under the realistic probability test, which petitioner bears the burden for, he has to show that there are cases where Nebraska applies this statute to this type of non-morally trepidatious conduct and he hasn't shown that. We would ask that then this court... What do you say about his hypothetical of the joyriding? They don't intend to permanently deprive use because they're just going to ride around town for an hour or two and then abandon the car, but they're also not intending to return it to the owner. Would that if in Nebraska, an individual was convicted under 28-517, even if the action was joyriding, because the prosecution has to show this lack of intent to restore, if he's convicted under the statute, he doesn't have an intent to restore the car to the owner. Because it is an element, they have to prove it. So I would say that to the joyriding hypothetical, no, that if he's return it to the owner. He may ditch it, but that's still a step removed from actually intending to get it back to the owner. In his hypothetical though, he assumes there's no intent to restore it to the owner, but that he's only going to temporarily deprive the owner of its use for a couple hours. And therefore, it's a temporary deprivation, not a permanent deprivation. Well, there's no cases under 28-517 that covers the scenario that he raises. But even if he just uses it for a couple hours and ditches it, again, there's no restoring that stolen property to the owner. So it is an intended permanent taking on his part, unless he drives it back into the driveway. He hasn't said any cases where that happens. And under the statute, as what is required for prosecution, there's no indication that that conduct would fall under this, given that it is expressed that there has to be this intent to return, to restore the property to the owner. And as a result, we also ask that similar, there's a similar case in the Third Circuit, DeLeon Reynoso of Ashcroft. We ask that this court join with the Third Circuit in finding that receiving stolen property is a theft, offense, crime involving moral turpitude. And then just briefly, I just wanted to address petitioner's claim regarding Pereira. And here, the petitioner's notice to appear and his hearing notices combined were sufficient to vest jurisdiction with the Immigration Court. Pereira does not provide him a basis to prevail. Pereira involved a different issue. The stop time rule, continuous presence, that's not an issue here. And we ask that the court look to its own case law in Hayter and also to the Seventh, Sixth, Second, and Ninth Circus, which have all held that post-Pereira, a notice to appear combined with hearing notices are sufficient to vest jurisdiction with the Immigration Court. If there are no further questions. What is the Attorney General's position on whether Diaz-Lizarraga may be applied retroactively? Well, for this case, of course, the matter of Diaz-Lizarraga doesn't come into play because the board didn't rely on it. And this court in Dominguez-Ruera has case law on the theft offense being the intended permanent taking. As a result, I didn't address it in this case. That, as you well know, most likely is an issue that we have not been successful on in most circuits. And here, petitioner's conviction did occur prior to matter of Diaz-Lizarraga. So you're not urging us to rely on it at all because the board didn't rely on it? No, the board did not rely on it at all. If we disagreed with your position on the statute. In Nebraska, we'd have to remand the case, huh? The board could then decide whether to try to rely on Diaz-Lizarraga. Yes, but here, you know, this statute does punish intended permanent takings, which the court has held in Dominguez is what constitutes a theft offense law. I know that's your position. I was trying to follow through on if we were not persuaded, if we thought there was some daylight between failure to prove intent to restore and intent to deprive permanently, then what would happen? I guess you're saying we would have to remand it. You could remand and then the board in the first instance could consider this particular statute with matter of Diaz-Lizarraga, which they didn't apply here. Of course, you know, there's no need for you to do that. It would be up to the government to decide what position to take then, I suppose. Excuse me? I didn't hear you. If there were a remand, the government would have to decide before the board whether to urge applying Diaz-Lizarraga. Exactly. Of course, here, it's the intended taking. The statute makes that clear. Petitioner hasn't shown a realistic probability with any case law that he cited because he hasn't cited any case law showing that Nebraska applies it to non-morally trepidatious crimes. Very well. Thank you for your argument. Mr. Weir, I'll give you a minute or two if you'd like rebuttal. I'll give you two minutes. Thank you, Your Honor. In response to your question to me about whether or not ditching a vehicle in my hypothetical would be restoring it to the owner. No, it wouldn't be restoring it. It would be disposing it with intent to restore. That was the question. I just want to be clear what the question was. Would it be disposing of the item with intent to restore it to the owner? I do not believe so. I think that would be a stretch of the word restore because the individual who had the car is not affirmatively returning it and has no intent to bring it back into the possession of the owner. It requires a third person to take a step to then restore it to the owner. That would be my argument. But you could intend something knowing that it would require a third party to affect your intent. In fact, the statute seems to contemplate something like that when it says disposal is one of the possible actions. Doesn't it? That was my question at least. I think it says three, received, retained, or disposed. It actually says at 28.509 subsection 1b to dispose of the property of another so as to create a substantial risk that the owner will not recover it in the condition it was when the actor obtained it. That's what we have in terms of dispose. But I thought we were on 517. 517 is within the 28.509 through 28.517 is the entire theft statute. So you look to the definitional section in 28.509. Oh, I see. You're citing the definition of dispose? Correct. Well, go ahead. What was your point on that then? I've interrupted you if you want to finish your thought. It states so as to create a substantial risk that the owner will not recover it in the Okay. Very well. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.